( Hamilton County Probate Court.)

IN THE MATTER OF THE CONTEST BY CHARLES H. JONES OF THE ELECTION OF O. W.. BENNETT AS SOLICITOR OF THE VILLAGE OF BOND HILL, HAMILTON COUNTY, OHIO.

---

The provisions of the Australian Ballot Law, pertaining to the color of the pencil to be used in making the ballot, the kind of a mark by which the voter indicates his choice and the place where the mark is to be put upon the ballot (section 2966), are mandatory and must be substantialy complied with before the ballot becomes a *legal one* and can be counted.

At the municipal election held in the village of Bond Hill on the first day of April, 1901, there were two candidates for the office of solicitor of said place, viz., Orin W. Bennett and Charles H. Jones. There were three tickets printed on the ballot used at said election designated respectively, Independent, Citizens and Progressive. They appeared on the ballot in the order named. O. W. Bennett was a candidate on the Independent ticket, Charles H. Jones on the Citizens ticket; and there was no candidate for the office of solicitor on the Progressive ticket. The result of the election as shown by the poll-book and tally sheet, and as certified by the judges of election to the

Deputy State Supervisors of Election for said office was as follows: O. W. Bennett, 105 votes; Charles H. Jones, 104 votes. Attached to the tally sheet was a certain ballot which the judges of election refused to count and which, upon request of the challengers, was certified to the Deputy State Board of Supervisors of Elections. This ballot, it is claimed by the contestant, should have ben counted for him for the office of solicitor, thus making him 105 votes and the result of the election for said office a tie. The ballot was marked as follows:

In the circle at the head of the Progressive ticket, viz., the third ticket on the ballot, was a cross mark. In the space wherein was printed the name of Charles H. Jones for solicitor was a small cross mark after Mr. Jones' name. Mr. Jones claimed that it was apparent from the marking of the ticket that the party casting this ballot intended to vote for him and that the ballot should be so counted notwithstanding the fact that the cross mark was after instead of before his name.

Proceedings to contest the election were brought upon this ground.

(Verdict for contestee Bennett.)

CHARGE OF THE COURT.

FERRIS, J.

*Gentlemen of the jury:*

You have been brought here by the processes of the law, for the purpose of hearing and determining a contest between two persons who were candidates for the office of solicitor in the village of Bond Hill, at the recent April election, in which it appears, from the testimony, that the contestant received 104 votes and the contestee received 105 votes. And it is urged by the contestant, in this matter, that he was entitled to have received, at that election, an addiional vote, making the number of ballots cast for him 105, the same as that of the contestee, by reason of the fact that at that election a vote was cast, and by the judges of that election not counted, which vote, it is urged, should have ben counted for the contestant, Charles H. Jones. And you are here for the purpose of determining, in accordance with the rules of law, whether, or not, such a vote was a legal ballot for Charles H. Jones and should have been counted by the judges of election for him.

In order to determine that question, and to enable the jury to receive that light that will enable them to intelligently pass upon this matter, there has been introduced in evidence, in this case, the testimony of one of the judges of the election, together with the return that was made to the proper authorities by the judges of that election in the precinct of Bond Hill; and with that return was affixed the ballot in dis-

[COPYRIGHT, 1901, BY CARL G. JAHN.]

pute, which ballot has been presented to the jury as a part of the evidence in this case.

So that the testimony has been, by the proofs and the exhibits, reduced to a comparatively narrow issue, namely: the determination of the question as to whether the ballot in question was, or was not, a legal ballot.

The provisions of the law relative to voting prescribe, among other things in the language of the act, the rules that shall be observed by the elector in marking his ballot. In every case a cross is the designation used to indicate the expression of the choice of the elector. Not only is the cross the mark of the designation, but the rules that are laid down covering a case of this kind prescribe the location of such mark to be within a circle, in the event that the party desires to vote a ticket in its entirety, which circle is placed at the top of the ticket; or, in the event that one desires to exercise a further choice, with reference to a portion of a ticket not under the circle originally designatd by him, by a mark; and the place designated by che statute is on the left of and opposite the name of each and every person thus proposed to be voted for by the elector.

The provisions in the law are clear, are unmistakable, and, in the judgment of the court, mandatory.

So that, if you shall ascertain, from the evidence submitted to you, that the party who is thus given, by the statute, opportunity of designating his choice in the matter of voting for a particular candidate—and the manner of designation is set forth clearly by the statute—fails to record his choice in the manner thus designated by the statute, he can not complain if he shall fail to have his vote counted.

The very object, gentlemen of the jury, of the law would be defeated by any other translation. It had, for its inception, the determination on the part of the Legislature, to provide a method by which one could vote in secret; by which he could record, without fear or favor, without the possibility of having his intent as expressed in his ballot known to a soul except himself. The very object of the law was to give expression to the views of the individual citizen. And thus, after great effort, what is known as the "Australian system" was adopted and became a part of the organic law, by which men, in a booth, alone, having before them the possibility of exercising the choice, but the manner of the designation only being determined by the law, are enabled to give expression to their views in the manner prescribed thus by the law.

And the authorities examined by the court are a unit in favoring such a translation of the law as will make it necessary, where a plan has been adopted by the law, for everyone to follow it exactly as provided by the statute.

So that, if you come to examine the testimony in this case, and ascertain, from the testimony, that an attempted designation has been made other than in the form and in the manner that has been detailed to you here and now by the court, you will find—and I so charge you as a matter of law—that such designation amounts to no designation, in law.

If it were necessary to give a reason for the rule further, it must seem apparent if such an interpretation were to be given by this court as would permit a voter to designate his ballot in some other way than that provided by the law, there is no rule that would place a limitation upon the extent to which one might vary the marking, even to the extent of mutilation. It is not a harsh rule to follow. The rule that is being here announced by the court has no hardships connected with it; for the rule and requirement is within reason, and it has for its object the perpetuation of a plan that has brought with it results that, in the main, have been most conductive to the public weal. And therefore it has been the policy of the courts, to construe these enactments rigidly and to require the enforcement of them scrupulously. And courts will move slowly and most cautiously along any line, in any direction, that would seem to violate, in the slightest, the spirit of the enactment known as "The Australian Law." And it is no answer, gentlemen of the jury, to say that the voter is disfranchised after having made an effort to record his choice through technical error. Any omission to comply with the distinct requirement of the law is not technical violation. It is a real violation. It is such a violation as that the law has said, by repeated interpretation by the courts of highest resort having similar statutes to construe, will deny to a voter the right thus to express his choice. Either it must be done in accordance with the law, or it is not done at all.

Therefore, gentlemen of the jury, you have before you a simple proposition. Take this testimony, retire to the room, under charge of the bailiff of this court, examine it; and if you should find, from the testimony, that the voter who attempted to record and to express his choice did not do so in accordance with the rules that I have stated, then you will find for the contestee. If, on the other hand, you find that the designation is of such a character as the court has stated it should be, then you will find for the contestor.

C. H. Jones for contestant.

Robert C. McConaughy for contestee.